**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0140n.06

Case No. 17-1546

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

COACH SERVICES, INC.; COACH, INC.,    )

                                                   )

    Plaintiffs-Appellees,    )

                                                   )    ON APPEAL FROM THE UNITED

v.    )    STATES DISTRICT COURT FOR

                                                   )    THE EASTERN DISTRICT OF

SOURCE II, INC.; CERHUE ANDRE    )    MICHIGAN

WALKER, Individually, dba Source II, Inc.    )

                                                   )

    Defendants-Appellants.    )

                                                   )

**FILED**
Mar 15, 2018
DEBORAH S. HUNT, Clerk

BEFORE: MERRITT, CLAY, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. The district court ruled that Cerhue Walker and Source II infringed Coach's trademarks, awarded statutory damages to Coach, and permanently enjoined Walker and Source II from using Coach's marks in the future. Because no reasonable jury could disagree with these conclusions, we affirm the district court's summary judgment ruling in favor of Coach.

Walker operated a retail clothing store in Detroit, Michigan through his company, Source II. After someone informed law enforcement that the store (Source Apparel) sold counterfeit goods, Homeland Security agents together with a Coach investigator launched a probe into possible trademark infringement. On four different dates, investigators saw Source Apparel offer counterfeit products for sale.

Detroit police and Homeland Security agents executed a search warrant at the store. During the search, one employee, Walker's daughter, admitted to the officers that the store's merchandise included counterfeit items. All told, officers seized thousands of knockoff bags, wallets, and accessories worth almost $1,700,000. Law enforcement inventory records listed "products" from Gucci, Prada, Hermès, Burberry, and Coach. Coach's investigator confirmed (and memorialized in a report) that some of the offered items imitated Coach products, including four purses and one wallet.

Michigan charged Walker with counterfeiting. Mich. Comp. Laws § 750.263(3). Shortly before Walker entered a "no contest" plea to the criminal charge, Coach filed this civil action against Walker and Source II, alleging violations of the Lanham Act, 15 U.S.C. § 1114 et seq., the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903(1), and state common law, including trademark, unfair competition, and unjust enrichment. Each of Plaintiffs' claims (with the exception of the unjust enrichment claim) turned on whether Plaintiffs could satisfy the "likelihood of confusion" test. *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006).

After discovery, each side moved for summary judgment. The district court granted summary judgment for Coach on liability, holding that it "is not genuinely disputed that Defendants offered counterfeit Coach purses for sale and those purses are presumed to have been likely to confuse consumers as to the origin of the products." R. 37 at 8. The defendants asked the district court to reconsider its decision, insisting that a reference to Walker's no-contest plea tainted the court's opinion and that Coach failed to produce physical evidence that Source Apparel sold Coach-like goods. The district court refused, and it eventually awarded statutory damages of $300,000 and a permanent injunction to Coach.

Walker and Source II challenge the district court's decision on several grounds: (1) It should not have found Walker personally liable; (2) Coach failed to introduce physical evidence of counterfeit goods to show infringement; (3) Coach committed spoliation by failing to preserve the counterfeit goods; (4) the court failed to give appropriate weight to Walker's affidavit; (5) the court erred by relying on Walker's no-contest plea; and (6) the court erred by relying on the Coach investigator's report.

*Forfeited arguments.* The defendants forfeited the first three arguments by failing to raise them below. Start with Walker's liability. When Coach moved for summary judgment, it argued in its opening and reply briefs that the district court should find Walker personally liable. Yet Walker and Source II never addressed the issue in response to Coach's motion and in their own cross-motion for summary judgment. Even after the district court noted in its summary judgment ruling that the defendants "have not addressed the issue of personal liability" and ruled against them on that basis, R. 37 at 9, Walker did not contest personal liability when he asked the district court to reconsider its summary judgment decision. Only now on appeal does he challenge the ruling. That is much too little and much too late. The argument is forfeited. *Am. Bank, FSB v. Cornerstone Cmty. Bank*, 733 F.3d 609, 615 (6th Cir. 2013).

A similar problem clouds the defendants' physical-evidence ground for appeal. In their cross-motion for summary judgment, the defendants insisted that "no physical evidence exists" to support the claim. R. 23 at 10. In response to Coach's motion, they complained that "the purported infringing goods (4 purses) are nowhere to be found." R. 28 at 2. But in each instance, the defendants never showed why, or explained why, Coach needed to produce the purses in order to prove infringement. The same silence encumbers their argument here. In their opening brief, they do not cite a single authority in support of the idea that physical evidence

(as opposed to eyewitness testimony or photographs) must be produced in order to establish a cognizable claim of counterfeiting. It is not our job to make the argument for them. *United States v. Brownlee*, -- F. App'x ---, 2017 WL 5625721, at *4 (6th Cir. 2017).

Even if we overlooked this forfeiture and even if the Lanham Act required a plaintiff to produce the imitated goods in all cases (a doubtful proposition), it wouldn't make a difference. The company admitted liability when it failed to provide "timely answers" to the plaintiffs' requests for admissions. R. 29 at 4; *see* Fed. R. Civ. P. 36(a)(3). Source II never asked the district court to withdraw its admissions, and it remains bound by them. *See Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 153 (6th Cir. 1997); Fed. R. Civ. P. 36(b).

What about spoliation? The defendants first alluded to this argument in a reply brief below. This first mention came too late (a reply brief) and was too brief to count as a preserved argument (a single sentence). *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Even if that were not the case, defendants admit that Homeland Security and the Wayne County Prosecutor's office, not Coach, controlled the evidence seized from Source Apparel. Coach had no duty to preserve what it did not "hav[e] control over." *Adkins v. Wolever*, 692 F.3d 499, 503– 04 (6th Cir. 2012).

*Preserved arguments.* That leaves three arguments, all preserved and all properly before us. In one way or another, each of these arguments takes issue with the district court's decisional process in granting summary judgment to Coach. As the defendants see it, the court in its summary judgment ruling failed to give proper consideration to Walker's affidavit, improperly referenced his no-contest plea, and relied on hearsay in the Coach investigator's report. But these process objections, even if accurate, would not prejudice them, as we review the legal

decision to grant summary judgment with fresh eyes. *See Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017).

A comparison to a sentencing or administrative law appeal illustrates the point. We might reverse a district court's sentencing decision based on a procedural error. But we usually remand to allow the district court to exercise its sentencing discretion anew because it has "an institutional advantage" in making sentencing determinations. *Gall v. United States*, 552 U.S. 38, 52 (2007). Likewise, if we find an agency decision arbitrary and capricious, we vacate the agency decision, send it back where it came from, and ask the agency to try again. *SEC v. Chenery Corp.*, 318 U.S. 80, 93–94 (1943). When the law requires a decisionmaker to exercise discretion, we usually police the decisionmaker's decisional process. Not so here. We are capable of deciding whether Coach was legally entitled to summary judgment on our own, regardless of any mistakes the district court may (or may not) have made.

We have no trouble concluding that Coach was entitled to summary judgment even if we accept each of these process-based objections. The reason: Source II admitted liability, Walker is the company's sole owner and President, and Walker forfeited any argument that he is not personally liable for Source II's conduct. It is as simple as that.

In reality, it is even simpler than that. As it turns out, the district court's alleged errors were not errors at all. The district court *did* consider Walker's affidavit under Civil Rule 56(c)(4). And it concluded that his claim that Source Apparel did not "display" Coach purses did not create a material fact dispute about whether it "offer[ed] them for sale." *Lollard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006). The district court did *not* rely on Walker's no-contest plea in violation of the rules of evidence. It referenced the plea in a single sentence in the "BACKGROUND" section of its opinion. R. 37 at 2. And the district

court did *not* rely on inadmissible hearsay. The facts contained in the Coach investigator's report—that he observed four Coach purses for sale at Walker's store—could "be presented in a form that would be admissible," namely live testimony. Fed. R. Civ. P. 56(c)(2); *see Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

For these reasons we affirm.